Good morning. May it please the court. I'm Paul Supple on behalf of the appellant Mr. Boris Zaprianov. This case involves a lawful permanent resident, Mr. Zaprianov, who pled guilty on March 24, 2000 to two Arizona revised statutes that basically are solicitation to the institution for the loss to the victim in the amount of $10,127.56. However, the record of conviction is silent as to how the Arizona court determined the amount of loss to the victim. Subsequent to that, in July 2008, removal proceedings were initiated by the Department of Homeland Security. The immigration judge denied the appellant's request for relief under cancellation of removal for lawful permanent residents. Based on the fact that the immigration judge felt that the restitution of the person was not sufficient, the appellant issued an aggravated felony. Therefore, he ordered Mr. Zaprianov removed to his native Bulgaria. The appellant requested for a continuance so that he could file a motion to vacate his conviction, and the judge denied that. He basically suggested... How was his first request for continuance for that purpose, was it? No, Your Honor. There were several continuances. Apparently, Mr. Zaprianov had been representing himself. At one point in time, there was a counsel that came in and started representing him. And I think that was like a year before the final hearing. But now he had secured a vacation for the purpose of rehabilitation, but not on a constitutional basis. And hadn't the statute of limitations run with respect to making a claim under 2254? Well, he did file a motion to vacate. And our contention is that the motion that was filed with the Arizona court was not just for rehabilitative purposes. Well, the judgment didn't say anything other than for rehabilitative purposes. It was just in his application that the attorney cited constitutional infirmity. Well, that wasn't the attorney. I believe that was the immigration... I'm sorry, the criminal court judge that found that in the plea that was made, that the appellant was not advised of the immigration consequences. And therefore, he did not enter into a, in what we are saying, an intelligent, voluntary, and knowingly plea. And that's why the court felt that because he was not informed, and this is back in 2000 before Padilla, that because he was not informed of the immigration consequences, the court I believe felt that he had to include in that order that language that says that at the time that defendant pled guilty and accepted responsibility for this matter, he was not informed of the severe collateral consequences that a felony conviction has upon immigration status. That was the only way that at the time that the appellant could file a motion. The government argues that he should have filed Rule 32 relief. However, there's limitations under that relief, and that's that it has to be filed within 90 days. Obviously, this was way past the 90 days, so the appellant could not seek relief under Rule 32. Furthermore, there are some exceptions, but none of those exceptions apply to the appellant. And therefore, that's why he did not file Rule 32. If this Court finds that the vacatur that was granted due to the constitutional defects, then the appellant would be eligible for cancellation of removal. Sotomayor Well, what about the other crime, the crime for solicitation of a fraudulent scheme? That was used as a predicate for removal. But if that is not categorically a match as an aggravated felony under the statute, wouldn't that also make him eligible for cancellation? If it's not categorically matched as an aggravated felony, then he would be eligible for cancellation or removal for it. So it's one or the other, right? Well, if the Court recognizes that the vacatur signed by the Arizona trial court was not only for rehabilitative purposes, but was also due to constitutional defects. We'll assume that we don't agree with that argument, okay? Right. Assume we don't agree with that argument. Let's talk about the conviction. I mean, I guess I have two questions about this conviction. One is, what was he actually convicted of? He was convicted of solicitation to commit fraudulent schemes and artifice in violation of Arizona revised statute section 13-1002, and that's a solicitation in 13-2310. Those were the two offenses that he was convicted of. Is it a single offense, a single count that references two statutes so that you use solicitation and then the object of the solicitation is the second site, but it is one count rather than two counts? That's my understanding, Your Honor. In order for the Arizona courts to charge the defendant at the time, Mr. Tapia, they would have to incorporate solicitation with a fraud statute in order to make it into one. Okay. But there wasn't a separate count that just cited the solicitation statute and then another count that cited the fraud. It's one count. The count he was convicted of was a single count of solicitation to commit fraud or artifice, and it cited the both sections. As it read. As it read, yes, Your Honor. Okay. Now, under and to answer the Court's question, well, solicitation is not, doesn't fall under the aggravated felonies, only attempted and conspiracy, and that's been our argument. But that's under a different clause. There's a separate clause in the definition of aggravated felony that says, you know, attempt or conspiracy, and it doesn't mention solicitation. But you're up in a different clause that just says that it's a crime involving fraud, and isn't solicitation to commit fraud, doesn't that involve fraud categorically? Well, I guess the Court has to make that determination whether it is categorically included, the solicitation with a fraud element, and I guess that's what the Board of Immigration Appeals was saying, that using the category approach, categorical approach, they would have to look at the solicitation in conjunction with a fraud element in order to make a finding. Well, fraud doesn't have to be an element. It has to entail an element, doesn't it? We're not speaking, in other words, we've had a couple of cases, the Prakash case and so forth, where the underlying crime, the characteristics of that underlying crime were imputed to the solicitation. That's correct. On the Prakash case, though, that was a crime of violence. In that one, the solicitation was similar to the federal law, which is solicitation to commit a felony. In this case, we don't have a federal statute. There's no solicitation to commit fraud under the federal law. So you're talking about whether or not it's a generic match for the federal crime. That's correct, Your Honor. And in Arizona, is it possible to be convicted of solicitation of fraud without actually committing any fraudulent acts? I guess the question is, what kind of behavior is required? Well, I mean, obviously, we're talking about the categorical approach. And I think many judges on our court have expressed frustration with the categorical approach because we have to apply it almost in the abstract without regard to the actual conduct that actually happens. So we have to ask, is it a categorical match for an aggravated felony under Moncrief and that line of authority? That's correct. I mean, it is. We have to look not at the offense itself, at the behavior, but we have to look at the least or the minimum behavior that could be prosecuted based on that statute to make it a match, whether it's going to be categorical or not. Can you give an example of how this Arizona statute could be violated when it didn't involve fraud or artifice, in order to say that it sweeps more broadly? There could be situations in which, let's say, someone is misrepresenting himself with immigration documents, purposely showing himself as being someone else and committing fraud in front of the immigration court. There's documentation that can be used, I guess, identity theft, using that someone else's information and committing fraud. That would be about the only- That still sounds like it involves fraud or deception or artifice. Yeah, that's about the only accident I can think of that would be close to not being fraud. The other issue, I guess a big issue, is whether the restitution in the amount of $10,127.56, was that an actual loss to the victim? The criminal court was silent as to how we determined the amount of $10,127.56. We don't know whether there was any punitive fees that were involved in this, whether the victim requested punitive damages, and that was included in the $10,127.56. That's completely silent, and it's up to the government to be able to prove this with a clear and convincing standard that the loss was tied to the specific counts. And all we are doing right now is speculating as to how the court determined that amount. What authority would there be for awarding punitive damages in a restitution? Well, we don't know if the court, in lieu of making a- Well, that would be more of a civil action regarding the punitive damages, but we don't know whether the court took that into consideration in making this award to the victim. Why isn't it a prima facie satisfaction of their burden to produce a judgment that says restitution in an amount that's over the limit? That's a judgment that orders restitution, which is repair for loss, and it's in an amount over $10,000. If you think that was wrong, you know, you could rebut that prima facie case, but why wasn't that enough to carry their burden if unrebutted? Well, at the time that the defendant took the plea, he was not aware, first of all, that this type of loss of over $10,000, and he was never informed that this would cause him to be placed in removal proceedings. If he would have known at the time, I'm sure that he would have advised his counsel that you need to make sure that the restitution is less than that $10,000, and we should challenge that. But it was never challenged. There was never testimony taken either in immigration court or at the criminal courts in regards to how this amount was determined. Thank you. All right. Thank you, counsel. Your time is up. Thank you. May it please the Court. Nell Seymour on behalf of Attorney General William Barr. Petitioner is statutorily ineligible for cancellation of removal for certain permanent residents because his criminal conviction is an aggravated felony and is final for immigration purposes. Petitioner was convicted of solicitation to commit fraudulent schemes and artifices, as has been discussed, which is, to wit, an aggravated felony, an offense that involves fraud or deceit and one in which the loss of the victim exceeds $10,000. It's the government's position that M-1 should be interpreted broadly based on its own language and that the court should look to the underlying crime and not just solicitation and isolation. We can't look at what actually happened here. We have to look at the solicitation offense that occurred and see if it's a match to the federal generic offense. And I guess the question is, does the statute under which he was convicted necessarily involve fraud or deceit? The answer to that, Your Honor, would be that it does. He read together Petitioner was convicted of a specific intent to promote or facilitate the commission of a scheme or artifice that involves the act of commanding, encouraging, requesting, or soliciting another to become complicit in a fraudulent or deceitful scheme in order to obtain a benefit. And it's the government's position that that necessarily involves fraud because there's no conceivable way in which the elements of solicitation combined with the elements of the underlying offense aren't a categorical match and don't necessarily meet the definition of aggravated felony under the statute. Thank you. So my question is, how does Arizona apply that? Does it necessarily apply that to combine with the other parts of it? Is it one crime or is solicitation a separate crime in Arizona? The solicitation is a separate statute, but it's all within one count. And that was my point about looking to the underlying crime. I understand that it is the solicitation to commit a certain crime, but that certain crime is inherently fraudulent or deceitful, and thus what he was convicted of is inherently one that involves fraud or deceit. Does that answer your question, Your Honor? I think Arizona law on this works in an odd way. So I think I have to look a little further into that. The government would also point out that, pursuant to Ninth Circuit case law and case law within the board, the fact that M-1 doesn't cross-reference any other particular federal crime and that there is no exclusionary list in which some inchoate offenses are listed to the exclusion of others is evidence in support of M-1 being interpreted broadly to include anything that would involve fraud or deceit, such as the conviction that Petitioner has in the case today. In addition, to address opposing counsel's arguments about the subsection U being an indication that Congress meant to limit the inchoate offenses, the government's position is that that is not true, considering the case law which supports the idea that each subsection of 1101A43 is an independent basis, and that the subsection at issue today, M-1, does not list any inchoate offenses to the exclusion of others, and it shouldn't be interpreted for that reason as solicitation not meeting the categorical definition. Why doesn't Levea Lecia influence the outcome here? Because contrary to Levea Lecia and Coronado Durazo in this case, Your Honor, there isn't, like I mentioned, there is no exclusionary list. So in those cases, attempts and conspiracy are both delineated, which the court decided meant that solicitation was intentionally left out, whereas here there is no such exclusionary list. And the language of M-1 itself, the plain language we're using involves, implies that it's meant to be interpreted very broadly to incorporate any crime that might be inherently fraudulent or deceitful. In addition, the government's position is that the loss to the victim was definitively more than $10,000 based on the plain language of the order, which, as been discussed already, clearly states that the restitution is for the economic loss to the victim. And there is no evidence or legal support for the claim that the money doesn't reflect an actual loss to the victim and doesn't meet that circumstance-specific component of this. statute. The government would also state that vacators for rehabilitation reasons are not meant to have immigration consequences, and it's clear from the record that the vacator was pursuant to rehabilitative statutes. Does it matter whether the rehabilitation statute is invoked by the, you know, the defendant in challenging the conviction on grounds that include constitutional grounds? Does that make a difference? I'm sorry, can you repeat that? Does it make a difference that the rehabilitative statutory scheme available under state law is invoked by the defendant in challenging the conviction and invoking that mechanism on constitutional grounds? His claim is that I get that it's a rehabilitative, you know, vehicle. That's what they gave me because the time had run for the other vehicles, so I took the rehabilitative one, but I put constitutional arguments into that vehicle. Does that make a difference in your mind? And if not, why not? The government's position is that that would not make a difference because although within his motion he states that the reason he sought vacature was for immigration purposes, there's no indication that that was the reason why it was granted. And more than that, there's case law that directs the court to look at the statutes that were cited and to look at what the purposes of those statutes are, which here are rehabilitative. And specifically in Publick-Mendoza, the same statute, which was within the range that he cited within his motion, Arizona Statute 13907, is for rehabilitative purposes only and may be used in subsequent removal proceedings. Even though the word rehabilitation is not necessarily in the statute, it's clear that that's the purpose behind the statute and that it was not meant to have immigration purposes. And to the extent that opposing counsel argues that his plea was not constitutional, knowing, or voluntary and relies on pedia to that effect, the government's position is to repeat that pedia does not have a retroactive effect. And the fact that petitioner may not have been aware of the immigration consequences, it's relatively settled within law that that's not a reason that makes his plea any less knowing or voluntary or any more final for immigration purposes. If there are no further questions, Your Honors, I think the government would rest. Thank you, counsel. I just had a quick correction that I wanted to make to my argument. I did mention that the judge had actually prepared this document. He was actually the attorney for it. On the vacatur, he was the attorney for the appellant that was the one that actually prepared that document and wrote that information into the statute. The judge signed off. So I just wanted to correct myself on that. All right. Thank you very much, counsel.
judges: Wardlaw, Settle, Collins